Lawrence Rosenthal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: lrosenthal@stroock.com
*Attorney for Plaintiff Intema Limited*

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------- X
                                                   )      Civil Action No. 09-0633 (ADS)
INTEMA LIMITED                                     )
                              Plaintiff,           )
                                                   )
              v.                                   )
                                                   )
NTD LABORATORIES, INC., and                        )
PERKINELMER, INC.                                  )
                                                   )
                              Defendants.          )
                                                   )
                                                   )
                                                   )
-------------------------------------------------- X
```

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENJOIN DEFENDANTS FROM PROSECUTING OTHER ACTIONS

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ...................................................................................1

II.     STATEMENT OF FACTS .......................................................................................2

    A.      Intema's U.S. Patent No. 6,573,103........................................................................2
    B.      Negotiations with Defendant PerkinElmer ...............................................................4
    C.      The Instant Action.....................................................................................................7
    D.      Defendants' Contacts With New York .......................................................................7

III.    ARGUMENT ...........................................................................................................8

    A.      The Massachusetts Action Is An Improper Anticipatory Filing ....................................9
    B.      The Balance Of Conveniences Weighs In Favor Of Maintaining Plaintiff Intema's
    Action In This District ..........................................................................................14
        1.      Locus of the Operative Facts ..............................................................15
        2.      Convenience of Witnesses ...................................................................16
        3.      The Principal Places of Business and Operations For The Parties To The Action17
        4.      Location of Relevant Documents and the Relative Ease of Access to
            Sources of Proof..............................................................................18
        5.      Availability of Process to Compel Attendance of Unwilling Witnesses ...............19
        6.      Forum's Familiarity With the Governing Law ...........................................19
        7.      Weight Accorded a Plaintiff's Choice of Forum .....................................19
        8.      Trial Efficiency and the Interests of Justice.............................................19

IV.     CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

CASES

*Columbia Pictures Industries, Inc. v. Schneider*,
    435 F. Supp. 742 (S.D.N.Y. 1977)........................................................................9

*Continental Insurance Co. v. Wickes Companies.,*
    90 Civ. 8215, 1991 U.S. Dist. Lexis 12426 (S.D.N.Y September 5, 1991) ...........................14

*Factors Etc, Inc. v. Pro Arts, Inc.,*
    579 F. 2d 215 (2d Cir. 1978)..........................................................................9, 10

*Fuji Photo Film Co. v. Deep Creek Design Inc.,*
    98 Civ. 2776, 1998 U.S. Dist. Lexis 19525 (S.D.N.Y. December 15, 1998) .................. 10-11

*Gibbs & Hill, Inc. v. Herbert International Inc.,*
    *745 F. Supp. 993* (S.D.N.Y. 1990)................................................................... 14-15

*Great American Insurance Co. v. Houston General Insurance Co.,*
    735 F. Supp. 581 (S.D.N.Y. 1990)......................................................................13

*Riviera Trading Corp. v. Oakley, Inc.*,
    944 F. Supp. 1150 (S.D.N.Y. 1996).........................................................9, 11, 14, 20

*William Gluckin & Co. v. International Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969).........................................................................9, 14

STATUTES

28 U.S.C. § 1404(a) ...........................................................................................14

28 U.S.C. § 2201.............................................................................................10

35 U.S.C. § 101..............................................................................................7

OTHER AUTHORITIES

17 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 111.13 [1] [o] [ii] [B] and
    [C] (3d ed. 2008) ....................................................................................9

Plaintiff Intema Limited ("Intema" or "Plaintiff") moves to enjoin Defendants PerkinElmer, Inc. ("PerkinElmer") and NTD Laboratories, Inc. ("NTD Labs") (collectively "Defendants") from prosecuting the declaratory judgment action captioned *PerkinElmer, Inc. and NTD Laboratories, Inc. v. Intema Limited*, Civil Action No. 1:09-CV-10176-NG (D. Mass.) (the "Massachusetts Action"), and any other action in any other jurisdiction involving Intema's U.S. Patent 6,573,103 (the '103 Patent), against Intema and its representatives, agents, licensees under the '103 Patent and sublicensees thereunder.   Plaintiff offers the accompanying Declarations of Nicholas J. Wald ("Wald Dec.") and Lawrence Rosenthal ("Rosenthal Dec.") and the Exhibits thereto in support of this Motion.

## I.   SUMMARY OF ARGUMENT

This present action charging the Defendants with infringement of the '103 Patent was filed on February 13, 2009, while the Massachusetts Action seeking a declaration of non-infringement and invalidity of the '103 Patent was filed by Defendants on February 5, 2009. Rosenthal Dec. Ex. 5.   The Second Circuit's so-called "first filed" rule generally provides priority to the first filed action where there are two competing actions involving the same subject matter absent a showing that the balance of convenience or special circumstances justifies giving priority to the second action.   Such special circumstances seek to prevent forum shopping and to encourage amicable settlement of disputes.   Thus, this Circuit has a well-established exception, which provides priority to the second filed action where, as here, the first filed suit constitutes a "race to the courthouses" made under the apparent threat of an adversary filing the mirror image of that suit in a different federal court.   Defendants' declaratory judgment action was filed in the District of Massachusetts at a time when Intema's New York counsel, having threatened suit, was actively engaged in settlement negotiations with PerkinElmer, NTD Labs' parent, and was

in fact awaiting a response to his last offer.  Rosenthal Dec. ¶¶ 3-12, Exs. 1-5.  Intema did not file first because of the ongoing negotiations and Defendant PerkinElmer's request for time to consider Intema's settlement offer.  Rosenthal Dec. ¶12.  The present action is the mirror image of the Massachusetts Action.   Because Defendants filed the Massachusetts Action while conducting bad faith negotiations for a license to Intema's '103 Patent and in anticipation of Intema's filing of a complaint in this District, the Massachusetts Action is a classic example of an improper anticipatory filing.  Accordingly, Defendants should be enjoined from prosecuting the Massachusetts Action.  They should not be afforded the protection of the first filed rule or be rewarded for their inequitable race to the courthouse.

This Court should also grant Intema's motion because the first filed rule does not apply where the balance of convenience supports giving priority to the second-filed action.  The Eastern District of New York is the locus of operative facts because the alleged direct infringement occurred (and is occurring) at Defendant NTD Labs' premises in Melville, New York.  As such, many of the documents and witnesses likely to be required in this case are located in the Eastern District of New York, while few are located in Massachusetts. PerkinElmer is NTD Labs' parent and a multinational company with revenues of $1.8 billion in 2007.  PerkinElmer should not be heard to argue that it lacks the means to bring to this District any documents or witnesses not located here.  Accordingly, the balance of convenience weighs in favor of the Eastern District of New York being the proper forum to hear the instant action.

## II.   STATEMENT OF FACTS

### A.   Intema's U.S. Patent No. 6,573,103

The '103 Patent, entitled "Antenatal Screening For Down's Syndrome", issued on June 3, 2003, based on a United States application filed on April 29, 1999, and claiming the priority of

two British applications filed in 1998.  Wald Dec. ¶3, Ex. A.  The '103 Patent is directed to a method for determining whether a pregnant woman is at an increased risk of having a fetus with Down's Syndrome by analyzing at least one biomarker in each of the first and second trimesters of pregnancy, at least one of the biomarkers used in each trimester being different from the biomarkers used in the other trimester.  Wald Dec. Ex. A.

Professor Sir Nicholas J. Wald is the sole named inventor on the '103 Patent and is a Director of Plaintiff Intema.  Wald Dec. ¶¶ 3, 4.  He has a medical degree and is a Professor at St. Batholomew's and The Royal London School of Medicine and Dentistry.  He is also the Director of the Wolfson Institute of Preventative Medicine at St. Bartholomew's and The Royal London School of Medicine and Dentistry and has authored over three hundred peer-reviewed publications in the area of preventative medicine.  Wald Dec. ¶ 5.  Both Professor Wald and Intema reside in England. Wald Dec. ¶¶ 2, 4.

Intema has undertaken a successful licensing campaign under the '103 Patent, with five licensees in the United States.  These licensees include three large and well known nationwide providers of testing to the medical profession.  Wald Dec. ¶ 13; Rosenthal Dec. ¶¶ 13-15. As acknowledged by the Defendants in the Complaint in the Massachusetts Action (Rosenthal Dec. Ex. 5 at ¶¶15-17), Intema has licensed the '103 Patent to Genzyme Corporation ("Genzyme"), Laboratory Corporation of America ("Lab Corp.") and Quest Diagnostics Incorporated ("Quest"), each of which has a substantial presence in New York.  Wald Dec. ¶13; Rosenthal Dec. ¶¶13-15, Exs. 6-8.  Still further, Intema has granted Logical Medical Systems Limited ("LMS"), a provider of software capable of analyzing the results of tests covered by the '103 Patent, of which Professor Wald is also a Director, a non-exclusive license to the '103 Patent with the right to sublicense its customers who wish to perform tests covered by the '103 Patent

3

using the LMS software.  LMS has sublicensed numerous entities in the United States under the

'103 Patent, one of which is located in this District.  Wald Dec. ¶¶15, 16.  Intema entered into

these licenses long prior to the Massachusetts Action.

### B.      Negotiations with Defendant PerkinElmer

Defendant PerkinElmer approached Professor Wald in 2001 regarding a license to the

technology covered by the '103 Patent long before it acquired NTD Labs in 2006.  Wald Dec. ¶

7; Rosenthal Dec. Ex. 13.  Between the time Defendant PerkinElmer approached Professor Wald

in 2001 and the 2009 filing of the Massachusetts Action, Professor Wald, either directly or

indirectly, engaged in negotiations, albeit unfruitful, with Defendant PerkinElmer, of which

Defendant NTD Labs is a part.  Wald Dec. ¶8; Rosenthal Dec. ¶¶ 3-11, Ex. 13.  During this

period, Professor Wald had discussions with and corresponded with multiple representatives of

Defendant PerkinElmer.  Among those persons were Yvonne Parker, believed to be based in

Great Britain, and Ann-Christine Sundell, now the President of PerkinElmer's Genetic Screening

Team and who is believed to be headquartered in Finland.  Rosenthal Dec. ¶¶ 5, 17, Exs. 10-12;

Wald Dec. ¶ 8.  John E. Sherwin, appointed in March 2008 to be PerkinElmer's Director of

Laboratory Operations, including NTD Labs, reports to Ms. Sundell and resides in California.

Rosenthal Dec. Exs. 11, 12.  During the period of these negotiations, the '103 Patent issued, but

Defendants still did not take a license.

In August 2008, when it appeared to Professor Wald that Defendant PerkinElmer was

negotiating in bad faith, Intema retained the services of Lawrence Rosenthal and the law firm of

Stroock & Stroock & Lavan LLP ("Stroock") to continue the negotiations with PerkinElmer or to

otherwise enforce the '103 Patent.  Wald Dec. ¶ 9.  On September 19, 2008 Mr. Rosenthal sent

Mr. Robert F. Friel, CEO and President of PerkinElmer, a letter on behalf of Professor Wald and

Intema regarding the '103 Patent.  Rosenthal Dec. ¶ 3, Ex. 1.  The letter set forth Intema's position that Defendants' activities infringed the '103 Patent and put Defendants on notice that Intema would bring legal action if the matter could not be settled through a licensing arrangement.   Kevin Oliver, Vice President and Chief Intellectual Property Counsel of PerkinElmer, responded to the September 19, 2008 letter with a letter dated September 29, 2008, thus opening a settlement dialogue with Mr. Rosenthal.  Rosenthal Dec. ¶ 4, Ex. 2.

On October 14, 2008 Mr. Rosenthal and others from Stroock met with representatives of PerkinElmer, including Kevin Oliver, Chuck Morrison, Ann-Christine Sundell and Pamela Gray, Ph.D., at PerkinElmer's Waltham, Massachusetts offices to discuss PerkinElmer's and NTD Labs' potential licensing of the '103 Patent.  Rosenthal Dec. ¶ 5.

On November 7, 2008 Mr. Rosenthal sent Messrs. Oliver and Morrison of PerkinElmer a letter providing a proposal to settle the outstanding disputes between Intema and Defendant PerkinElmer and its subsidiaries in both the United States and other countries, including a license under the '103 Patent.  Rosenthal Dec. ¶ 6.  On December 8, 2008 Mr. Rosenthal received a letter from Mr. Oliver responding to the letter of November 7, 2008 and making a counteroffer to Mr. Rosenthal's offer of settlement.  Rosenthal Dec. ¶ 7.

On January 8, 2008 Mr. Rosenthal, together with others from Stroock, held a telephone conference with Messrs. Oliver and Morrison of PerkinElmer, during which Mr. Rosenthal advised that PerkinElmer's previous offer was unacceptable and made still another settlement offer, which included a license under the '103 Patent.  Mr. Oliver advised that Intema's proposal required consultation with and approval by PerkinElmer's management.  Rosenthal Dec. ¶¶ 8, 9, Ex. 3.  Mr. Oliver did not reject the offer, and Mr. Rosenthal was left with the impression that Intema's offer would receive favorable consideration.  Mr. Oliver advised that the consultation

5

and approval process would take about two weeks and that he would get back to Mr. Rosenthal with the decision.  Rosenthal Dec. ¶ 8.

Having received no response from Mr. Oliver, on February 4, 2009 Mr. Rosenthal followed up with Mr. Oliver via telephone, but he was not in.  Rosenthal Dec. ¶ 10.  Mr. Rosenthal left Mr. Oliver a voice mail message reminding him that he owed Mr. Rosenthal a response to Intema's last settlement offer.  Rosenthal Dec. ¶ 10.  On February 5, 2009 Mr. Oliver emailed Mr. Rosenthal to propose a telephone call on the afternoon of February 6.  Rosenthal Dec. ¶ 11, Ex. 4.  Mr. Oliver eventually confirmed that he would call Mr. Rosenthal at 2:00 pm on February 6, 2009.  Rosenthal Dec. ¶ 11, Ex. 4.

In the morning of February 6, 2009, Mr. Rosenthal received a call from Dalila Argaez Wendlandt of the law firm of Ropes & Gray LLP in Boston, Massachusetts, informing him that she had filed the Massachusetts Action on behalf of the Defendants.  Rosenthal Dec. ¶ 12, Ex. 5.  Further investigation revealed that the Massachusetts Action had been filed on February 5, 2009, the same day PerkinElmer's Mr. Oliver confirmed that he and Mr. Rosenthal would speak regarding Intema's outstanding settlement offer.  Rosenthal Dec. ¶ 12, Exs. 4, 5.  Having been engaged in continued negotiations for the licensing of the '103 Patent and having expected to continue the negotiations with Mr. Oliver during a call scheduled for later that same day, Mr. Rosenthal was surprised to receive Ms. Wendlandt's call and to hear that Defendants filed the Massachusetts Action.  Rosenthal Dec. ¶ 12.  Intema had refrained from filing suit against PerkinElmer and NTD Labs in the Eastern District of New York in view of the ongoing settlement negotiations.  *Id.*

### C.    The Instant Action

The instant action is an action for infringement arising under Section 271 of the Patent Statute, 35 U.S.C. § 101 *et seq.*, and was filed on February 13, 2009, just eight days after the Massachusetts Action.  In the complaint, Intema alleges that Defendant PerkinElmer, through the actions of its employees, divisions and/or subsidiaries, including, but not limited to, NTD Labs, has directly infringed and/or induced infringement of, and continues to directly infringe and/or induce infringement of, the '103 Patent.  Intema further alleges that Defendant NTD Labs has directly infringed and/or induced infringement of, and continues to directly infringe and/or induce infringement of, the '103 Patent by the practice of the methods covered by the claims of the '103 Patent.

### D.    Defendants' Contacts With New York

NTD Labs is a corporation of the State of New York.  Rosenthal Dec. Ex. 5 at ¶ 7.  The alleged acts of infringement are believed to have occurred at least at the NTD Labs' facility located in Melville, New York, a newly occupied 22,000 square foot building.  Rosenthal Dec. Ex. 11, Wald Dec. ¶¶ 10-12, Exs. B-E.  Specifically, it is believed that Defendant NTD Labs has performed and continues to perform antenatal tests covered by the '103 Patent, as evidenced by a sample NTD Labs Prenatal Screening Report, which reports on several antenatal screening tests, including a "Modified Sequential" test performed to assess "DOWN SYNDROME RISK." Wald Dec. ¶ 10, Ex. B.  Additional evidence is an NTD Labs "Ultra-Screen Two™ Requisition for Modified Sequential™ Screening", which permits physicians to order the "Modified Sequential" test believed to be covered by the '103 Patent.  Wald Dec. ¶ 11, Ex. C.  Also, an NTD Labs "REQUISITION AND CONSENT" order form for a variety of tests, including the "Modified Sequential" test believed to be covered by the '103 Patent, further evidences the

infringement by Defendant NTD Labs.  Wald Dec. ¶ 11, Ex. D.  All of these forms gave NTD Labs' former address in Huntington Station, New York in this District.  In a brochure distributed at a 2007 medical meeting and bearing NTD Labs Huntington Station, New York address, NTD promotes "Modified Sequential Screening."  Wald Dec. ¶ 12, Ex. E.

PerkinElmer is a Massachusetts Corporation headquartered in Waltham, Massachusetts and is a multinational company with facilities throughout the world.  Rosenthal Dec. Ex. 5 at ¶¶ 6, 14.  PerkinElmer and two of its entities are registered to do business in New York.  Rosenthal Dec. ¶ 22, Ex. 15.

The operations of PerkinElmer and NTD Labs are closely related, particularly with regard to the allegedly infringing tests. As noted above, NTD Labs is a wholly-owned subsidiary of Defendant PerkinElmer.  Rosenthal Dec. Ex. 13.  Moreover, PerkinElmer's own documents characterize these NTD Labs tests as essentially its own. For example, the 2007 PerkinElmer Annual Report identifies the NTD Labs Ultra-Screen® test (a predecessor to the NTD Ultra Screen Two and Modified Sequential Tests), as a principal product of PerkinElmer.  Rosenthal Dec. Ex. 14 at p.6; Wald Dec. ¶¶ 11, 12, Exs. D, E.  Indeed, the relationship between the Defendants is clearly announced by the signage at the NTD Labs' Melville facility, which displays the PerkinElmer name more prominently than the NTD Labs name.  Rosenthal Dec. ¶ 16, Ex. 9.  The NTD Labs webpages bear a PerkinElmer copyright notice.  Rosenthal Dec. Ex. 11.  PerkinElmer's annual reports emphasize the connection with NTD Labs. Rosenthal Dec. Exs. 13, 14.

### III.   ARGUMENT

Although the Second Circuit generally provides priority to the first filed action as between two competing lawsuits, this Circuit recognizes exceptions to this rule under special

8

circumstances also referred to as "factors of substance", such that the first to file rule is not to be rigidly applied.  *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 746-47 (S.D.N.Y. 1977) (analyzing the Second Circuit authorities and staying the first filed action). Among these special circumstances and factors are where the first filed suit constitutes an improper "anticipatory filing," one made under the apparent threat of an adversary filing the mirror image of that suit in a different district.  17 James Wm. Moore et al., Moore's Federal Practice § 111.13 [1] [o] [ii] [B] (3d ed. 2008) citing *Factors Etc, Inc. v. Pro Arts, Inc.* 579 F. 2d 215, 218-219 (2d Cir. 1978).  Second, the second action should be given priority where the balance of convenience weighs in favor of the second action.  *Id*;  *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).  In *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996), the Court identified other "special circumstances" that warrant exceptions to the first filed rule as including the defendant in the first filed action's "good faith attempts at settlement, judicial economy, the minimal difference in time between filing the two actions, and the lack of progress in either litigation."  All of the foregoing circumstances apply here.

The forum of the second filed court can enjoin a party from prosecuting the first filed action.  Moore's Federal Practice § 111.13 [1] [o] [ii] [C] citing *William Gluckin* 407 F.2d at 179-80 (applying customer suit exception to first filed rule).

### A.     The Massachusetts Action Is An Improper Anticipatory Filing

As noted above, an anticipatory filing is one made under the apparent threat of an adversary filing the mirror image of that suit in a different district.  Defendants PerkinElmer and NTD Labs' Massachusetts Action is just this.  Defendants were put on notice by Intema's counsel that Intema would enforce its rights in the '103 Patent absent satisfactory settlement of

9

its claims by a letter dated September 19, 2008 detailing the basis for a patent infringement action in New York based on NTD Labs' conduct in New York.  Rosenthal Dec. ¶ 3, Ex. 1. Indeed, having filed under the Declaratory Judgment Act, the Defendants' Massachusetts filing is only proper if a case or actual controversy existed, and Defendants rely on the threat of action by Intema in the September 19, 2008 letter for its declaratory judgment standing under 28 U.S.C. § 2201.  Rosenthal Dec. Ex. 5 at ¶¶ 11, 19.  Furthermore, the Defendants' Massachusetts Action seeks a declaratory judgment that the '103 Patent is invalid and not infringed by the Defendants. Rosenthal Dec. Ex. 5.  Defendants' claims of invalidity and non-infringement are properly raised in the instant action as affirmative defenses.  Thus, it is a mirror of the instant action and does not seek any relief beyond the scope of Intema's action.  Defendants PerkinElmer and NTD Labs cannot misuse the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the Intema in favor of the Massachusetts Action.  As noted by Justice Brennan, the "federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Factors,* 579 F. 2d at 219, quoting *Perez v. Ledesma,* 401 U.S. 82, 119 n.12 (1971)(Brennan, J. dissenting).  The Massachusetts Action is an improper anticipatory filing and priority should be given to Intema's instant action.

Where a party, such as Intema, is prepared to file suit, but first attempts to negotiate a settlement with its adversary, that party should not be deprived of the first filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit.  "Potential plaintiffs … should be encouraged to participate in settlement discussions without the fear that their good faith efforts will allow their adversary to commence litigation in a forum of their own choosing."  *Fuji Photo Film Co. v. Deep Creek Design Inc.,* 98 Civ. 2776, 1998 U.S. Dist. Lexis 19525, at *4 (S.D.N.Y. December 15, 1998) (copy annexed).

To do otherwise would violate "the Court's policy to encourage the amicable settlement of disputes and to discourage needless litigation." *Id.* at *3-*4; a*ccord*, *Riviera,* 944 F. Supp. at 1158-1159.  Defendant's filing of the Massachusetts Action falls squarely within this exception to the first filed rule.  Defendants filed the Massachusetts Action as a preemptory filing, while settlement negotiations between Defendants and Intema were ongoing.  Defendants claim in the Complaint of the Massachusetts Action that negotiations "ended in August 2008" (Rosenthal Dec. Ex. 5 at ¶ 10) is at best disingenuous.  Rosenthal Dec. ¶¶ 3-12, Exs. 1-4.

Defendant PerkinElmer approached Nicholas J. Wald, inventor of the '103 Patent and a Director of Plaintiff Intema, in 2001 regarding a license to the technology now covered by the '103 Patent.  Wald Dec. ¶¶ 3, 4 and 7.  The parties continued to negotiate, albeit unfruitfully, through August 2008, when it appeared to Intema that PerkinElmer was negotiating in bad faith. Wald Dec. ¶ 9.  At that time, Intema retained the services of the undersigned counsel to continue the negotiations with PerkinElmer on its behalf or otherwise enforce the '103 Patent.  Wald Dec. ¶ 9; Rosenthal Dec. ¶ 3.  Upon taking over the negotiations, Intema's counsel, in a letter dated September 19, 2009, made it clear to the Defendants that unless an appropriate settlement could be reached, Intema would seek to enforce the '103 Patent against the Defendants, expressly citing NTD Labs' activities, which PerkinElmer has to know took place in New York.  Rosenthal Dec. Ex. 1.  ("We are not seeking to merely continue the endless correspondence of the past, but believe that we can succinctly explain what Professor Wald is seeking and why it is in PerkinElmer's best interest to enter into an agreement with him …. Failing this we are prepared to vigorously enforce the '103 Patent against PerkinElmer and its NTD Laboratories subsidiary and seek damages for past infringement.")  With this backdrop, Intema's counsel continued the negotiations with PerkinElmer, including several offers and counteroffers, a face-to-face

meeting, correspondence (both mail and email) and telephone calls, until the Massachusetts Action was filed on February 5, 2009.  Rosenthal Dec. ¶¶ 3-12, Ex. 1-5.

The final days prior to Defendants' filing of the Massachusetts Action are telling, clearly portraying a classic example of a "race to the courthouses" and thus an improper anticipatory filing.  On January 8, 2009, Intema's representatives held a telephone conference with Kevin Oliver, Vice President and Chief Intellectual Property Counsel, and Chuck Morrison of PerkinElmer, during which Intema's representatives advised that PerkinElmer's prior offer was unacceptable and made still another offer, which included a license under the '103 Patent.  Mr. Oliver advised that the Intema proposal required consultation with and approval by elements of PerkinElmer's management.  Mr. Oliver did not reject the offer and Intema's representatives were left with the impression that their offer would receive favorable consideration.  Mr. Oliver advised that the consultation and approval process would take about two weeks and that he would get back to Intema's representatives with the decision.  Rosenthal Dec. ¶¶ 8, 9, Ex. 3. Having not heard from Mr. Oliver, Mr. Rosenthal attempted to contact him on February 4, 2009 and left a voicemail reminding Mr. Oliver that he owed Intema a response to its last settlement offer.  Mr. Oliver responded by email on February 5, 2009 and indicated that he could speak with Mr. Rosenthal in the afternoon of February 6, 2009.  Rosenthal Dec. ¶¶ 10-11, Ex. 4.  However, in the morning of February 6, 2009, Mr. Rosenthal received a call from Dalila Argaez Wendlandt of the law firm Ropes & Gray LLP informing him that she had filed the Massachusetts Action on behalf of the Defendants.  Further investigation revealed that the Massachusetts Action had been filed on February 5, 2009.  Rosenthal Dec. ¶ 12, Ex. 5.

Having been engaged in continued negotiations for the licensing of the '103 Patent since the September 19, 2008 letter and expecting to continue the negotiation with Mr. Oliver on a call

scheduled for later that same day, Mr. Rosenthal was surprised to receive Ms. Wendlandt's call and to hear that Defendants filed the Massachusetts Action.  Rosenthal Dec. ¶ 12.  Intema only refrained from bringing an action against Defendants in this District in light of the ongoing settlement negotiations.  *Id*.

Accordingly, Defendants should not be permitted to take unfair tactical advantage of Plaintiff Intema's good faith negotiations, and Intema should itself retain the benefit of the first filed rule and Defendants should be enjoined from prosecuting the Massachusetts Action.

Like the first-filer in *Great Am. Ins. Co. v. Houston Gen. Ins. Co.,* 735 F. Supp. 581 (S.D.N.Y. 1990), the Defendants here should not be rewarded for having continued bad faith negotiations to buy time for their anticipatory filing.   In *Great American* the court refused to give priority to the first filer when it filed a declaratory judgment action during continuing negotiations with the second filer.  *Id.* at 586.  In that case, as here, the defendant/second filer gave notice that, absent satisfactory resolution, it would file an action against the first filer plaintiff.  *Id.*  Plaintiff/first filer requested a sixty-day extension of time to investigate their possible liability, but within forty-eight hours of that request, without having heard from defendant or apparently attempting to make further contact with defendant, plaintiff/first filer filed a declaratory judgment action against the defendant/second filer.  *Id.*  Similarly, Defendants PerkinElmer and NTD Labs, on notice that Intema would enforce its patent absent satisfactory resolution, strung Intema along in negotiations and, in the end, like the inequitable first filer in *Great American*, unilaterally put off Intema for a specific, defined period of time so that the Defendants could file suit first.  Under these circumstances, as did the court in *Great America*, this Court can and should enjoin Defendants' prosecution of the Massachusetts action and any other action relating to the '103 Patent.

Finally, only a short period of time elapsed between the filing of the first and second actions (eight days) and on information and belief, Intema has not as yet been served with the Complaint in the Massachusetts Action.  Rosenthal Dec. ¶¶ 12, 23.  Such short period of time and lack of programs of the first filed action further exemplify the special considerations that warrant an exception t the first filed rule and enjoining the Defendants from prosecuting the first filed action.  *Fuji Photo Film*, 1998 U.S. Dist. Lexis 19525, at *4; *Riviera*, 944 F. Supp at 1158-59.

In sum, numerous of the special circumstances enumerated in the cases are found here and justify enjoining the Massachusetts Action.

### B.    THE BALANCE OF CONVENIENCES WEIGHS IN FAVOR OF MAINTAINING PLAINTIFF INTEMA'S ACTION IN THIS DISTRICT

Additionally, the second action should be given priority where the balance of convenience weighs in favor of it.  *William Gluckin,* 407 F. 2d. at 178.  This interests analysis under the first filed rule includes considerations of the same factors considered under a 28 U.S.C. § 1404(a) transfer motion.  *Continental Ins. Co. v. Wickes Cos.,* 90 Civ. 8215, 1991 U.S. Dist. Lexis 12426, at *3-*4 (S.D.N.Y September 5, 1991) (copy annexed).   The balancing of convenience "should be left to the sound discretion of the district courts."  *William Gluckin,* 407 F.2d at 178.  Among the factors to be considered are:

> (1) the place where operative facts occurred;
>
> (2) the convenience of the parties and witnesses;
>
> (3) the principal places of business and operations of the parties to the action;
>
> (4) the location of documents and the relevant ease of access to the sources of proof;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the plaintiff's choice of forum;

(7) a forum's familiarity with the governing law; and

(8) trial efficiency and the interests of justice.

*Gibbs & Hill, Inc. v. Herbert Int'l Inc., 745 F. Supp. 993, 996* (S.D.N.Y. 1990).  Even if the court should decide that the Massachusetts Action is not an improper anticipatory filing, the balancing of conveniences should overcome the first filed presumption and the present action should be maintained in favor of the Massachusetts Action.  Each factor as it applies to the instant case will be discussed in turn below.

### 1.  Locus of the Operative Facts

As discussed *supra*, the acts of infringement are believed to have occurred at least at the NTD Labs location in Melville, New York, within this District.  Wald Dec. ¶¶ 10, 12, Exs. B-E.  Specifically, it is believed that Defendant NTD Labs has performed and continues to perform antenatal tests covered by the '103 Patent as evidenced by: a) a sample Prenatal Screening Report, which reports on several antenatal screening tests including a "Modified Sequential" test performed to assess "DOWN SYNDROME RISK"  (Wald Dec. ¶ 10, Ex. B);  b) NTD Labs' "Ultra-Screen Two™ Requisition for Modified Sequential™ Screening", which is believed to permit physicians to order the "Modified Sequential" test believed to be covered by the '103 Patent (Wald Dec. ¶ 11, Ex. C);  c) NTD Labs "REQUISITION AND CONSENT" order form for a variety of tests, including the "Modified Sequential" test believed to be covered by the '103 Patent (Wald Dec. ¶ 11, Ex. D); and d) an NTD Labs brochure promoting "Modified Sequential Screening" and listing an address in this District.  Wald Dec. ¶ 12, Ex. E.

Accordingly, this factor weighs heavily in favor of the Eastern District of New York as

an appropriate forum as opposed to the District of Massachusetts.

## 2.     Convenience of Witnesses

Because NTD Labs performs the accused infringing tests at its facility in this District, NTD Labs personnel located in this District will likely be key witnesses in the actions at issue. Rosenthal Dec. ¶¶ 18, 19, Exs. 9, 11, 12; Wald Dec. ¶¶ 10-12, Exs. B-E.

Professor Wald, the inventor of the '103 patent and a Director of Plaintiff Intema, and Intema, are located in Great Britain (Wald Dec. ¶¶ 2-4), so that their location is a neutral factor as between this District and the District of Massachusetts.  While the convenience of counsel is not a factor, it is noted that Defendants' counsel Ropes & Gray LLP, have offices in New York, New York and a Ropes & Gray attorney on the Massachusetts Complaint, Bradford J. Badke, has his office in  Manhattan.  Rosenthal Dec. Ex. 5 at p. 7.

Conversely, some key witnesses are not uniquely situated in the District of Massachusetts or New York.  For example, John E. Sherwin, Director of Laboratory Operations at Defendant NTD Labs, lives in California and his supervisor, Ann-Christine Sundell, President of Perkin-Elmer's Genetic Screening Team which includes NTD Labs, and who negotiated with Professor Wald and met with Intema's attorneys, is located in Finland.  Rosenthal Dec. ¶¶ 5, 17-19, Exs. 10-12; Wald Dec. ¶ 8.  Another PerkinElmer representative who negotiated with Professor Wald, Yvonne Parker, is believed to be located in Great Britain.  Wald Dec. ¶ 8.  The District of Massachusetts is no more convenient to these witnesses than is this District, so the convenience of these witnesses is neutral.

Any personnel located at Defendant PerkinElmer's headquarters in Waltham Massachusetts will have to travel to the Eastern District of New York, but this would hardly be a hardship to a multinational company with revenues of $1.8 billion in 2007.  Rosenthal Dec. ¶ 21,

Ex. 14.

The Complaint in the Massachusetts Action makes reference to three licensees of Plaintiff Intema, Genzyme Corporation ("Genzyme"), Laboratory Corporation of America ("Lab Corp.") and Quest Diagnostics Incorporated ("Quest"), citing facilities in the Boston Metropolitan area.  Rosenthal Dec. Ex. 5 at ¶¶ 15-17.  Only one of these entities (Genzyme) is headquartered in Massachusetts.  Another (Quest) is headquartered in Madison, New Jersey and all have substantial presences in New York.  Rosenthal Dec. Exs. 6-8.  In fact, Intema has five licensees altogether in the United States, and a licensee in England, Logical Medical Systems Limited ("LMS"), of which Professor Wald is also a Director, has numerous sublicensees in the United States, including one in this District.  Wald Dec. ¶¶ 13-16.  The location of licensees under the '103 Patent is also a neutral factor.

Taken as a whole, the convenience of the witnesses weighs in favor of the Eastern District of New York as a venue as opposed to the District of Massachusetts.

### 3. The Principal Places of Business and Operations For The Parties To The Action

Plaintiff  Intema will have to travel to appear either in the Eastern District of New York or in the District of Massachusetts so its place of business is a neutral factor.

Defendant NTD Labs is a wholly-owned subsidiary of Defendant PerkinElmer located in this District.   Rosenthal Dec. Ex. 13.   As the parent of Defendant NTD Labs, Defendant PerkinElmer operates through and controls the actions of NTD Labs as evidenced by:

> (1) the identification of the NTD Labs Ultra-Screen® test as being a principal product of Defendant PerkinElmer in the 2007 PerkinElmer Annual Report (Rosenthal Dec. Ex. 14);

17

(2) the prominent placement of "PerkinElmer" on signage in front of the NTD Labs location in Melville, New York (Rosenthal Dec. Ex. 9);

(3) the repeated references to NTD Labs as a "PerkinElmer Company" (Rosenthal Dec. Ex. 11; Wald Dec. Ex. E);

(4) the PerkinElmer copyright notice on the NTD Labs website. (Rosenthal Dec. Ex. 11); and

(5) the appointment of two PerkinElmer employees (John E. Sherwin and Ann-Christine Sundell) as being in charge of NTD Labs. Rosenthal Dec. Exs. 11, 12.

PerkinElmer and two of its entities are authorized to do business in this District and at least PerkinElmer clearly does so. Rosenthal Dec. Ex. 15.

Due to the extensive contacts that the Defendants have with the Eastern District of New York and the State of New York, the weight of this factor should be in favor of the Eastern District of New York as a venue as opposed to the District of Massachusetts.

### 4.    Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

As noted above, Defendant NTD Labs is located in Melville, New York, within this District. Rosenthal Dec. Ex. 11. Since NTD Labs, the provider of the infringing antenatal tests (Wald Dec. ¶¶ 10-12, Exs. B-E), is located in this District, a significant proportion of the relevant documents will be located in this District.

Plaintiff Intema, the inventor of the '103 Patent (Professor Wald) and Intema's licensee, which has issued sublicenses in the United States (LMS), are all located in Great Britain. Wald Dec. ¶¶ 2-4, 15,16). They will have to produce documents either in the Eastern District of New York or in the District of Massachusetts. The burden of production will be the same in both Districts.

18

While possible PerkinElmer witnesses from at least four locations have been identified to date, namely Massachusetts, California, Great Britain and Finland, it is not certain where any required PerkinElmer documents may be located.  Rosenthal Dec. ¶¶ 5, 17, 20 Exs. 10-12; Wald Dec. ¶ 8. Any documents located at a PerkinElmer location other than at the office of NTD Labs, its wholly owned subsidiary, can be compelled to be brought to the Eastern District of New York with little burden on a company with the resources and existing facilities of the Defendants in this District.  *See* Rosenthal Dec. Ex. 14.

Accordingly, taken as a whole, the location of relevant documents weighs in favor of the Eastern District of New York as a venue as opposed to the District of Massachusetts.

> **5.    Availability of Process to Compel Attendance of Unwilling Witnesses**

This factor is believed to be neutral for the parties and, as such, should not be considered when determining which venue is proper.

> **6.    Forum's Familiarity With the Governing Law**

This factor is believed to be neutral for the parties and, as such, should not be considered when determining which venue is proper.

> **7.    Weight Accorded a Plaintiff's Choice of Forum**

This factor is believed to be neutral for the parties under this analysis in view of the clear evidence of a race to the courthouses, and, as such, should not be considered when determining which venue is proper.  In any event it is outweighed by the other factors favoring this District.

> **8.    Trial Efficiency and the Interests of Justice**

As discussed *supra*, anticipatory actions, such as the Massachusetts Action, are frowned upon as improper forum shopping.  Further, as in this case, the Massachusetts Action violates the

strong policy promoting amicable settlement of disputes. *Fuj Photo Film*, 1998 U.S. Lexis 19525, at *3-*4; *Riviera*, 944 F. Supp. at 1158-59. Based on a balance of all of the material circumstances and in light of the factors set forth above, the interests of justice weigh in favor of granting Plaintiff's motion to enjoin the Massachusetts Action.

In view of all of the foregoing, it is respectfully submitted that the balance of the circumstance in this case weigh significantly in favor of this District.

## IV.     CONCLUSION

In view of all of the foregoing, it is respectfully submitted that this District is the appropriate District to resolve the issues of validity and infringement of the '103 Patent and this Court should enjoin Defendants from prosecuting the Massachusetts Action or any other action arising out of the '103 Patent.

Dated: New York, New York
       February 17, 2009

Respectfully submitted,


___*s/ Lawrence Rosenthal*____
Lawrence Rosenthal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: lrosenthal@stroock.com
Attorney for Plaintiff Intema Limited

20